Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8098 | **DATE** | 10/17/2002 |
| **CASE TITLE** | Cabrera vs. Legal Assistance Foundation | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants LAFC's motion for summary judgment (8-1). Judgment is entered in favor of defendant. The trial date of 1/6/03 is vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 21 2002 | |
| | Notified counsel by telephone. | | date docketed | 21 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**DOCKETED**
OCT 21 2002

| | |
|---|---|
| MARY CABRERA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>LEGAL ASSISTANCE FOUNDATION )<br>OF CHICAGO, )<br>)<br>Defendant. ) | Case No. 01 C 8098 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Mary Cabrera was employed as a receptionist by the Legal Assistance Foundation of Chicago from May 1988 until she was terminated in late September 1999. She has sued LAFC for national origin discrimination and retaliation. LAFC has moved for summary judgment. For the reasons stated below, the Court grants LAFC's motion.

## Introduction

In support of its motion for summary judgment, LAFC filed a statement of material facts that it claimed were undisputed, *see* N.D. Ill. LR 56.1(a)(3), as well as a memorandum explaining the basis for its motion. Cabrera responded to LAFC's statement of material facts and filed her own statement of additional facts that she contended required denial of LAFC's motion. *See* N.D. Ill. LR 56.1(b)(3). Inexplicably, however, Cabrera did not file a memorandum in response to LAFC's summary judgment motion as required by N.D. Ill. LR 56.1(b)(2). In a nutshell, though her Rule 56.1(b)(3) statement notes the facts that she claims are disputed, Cabrera has

made no effort to explain or argue the materiality of those allegedly disputed facts. Counsel ought to have complied with LR 56.1(b)(2) in this case, and she would be well advised to do so in future cases.

## Facts

Cabrera is of Puerto Rican descent. LAFC hired her in May 1988 to work as a "floating" receptionist. In 1992, she was assigned permanently to LAFC's its Uptown office. From 1993 through 1997, she worked at LAFC's SSI project office. Finally, from May 1997 until her termination, Cabrera worked at LAFC's general office. In that position, Cabrera was required to screen hundreds of calls each day (including calls from non-English speaking clients and clients with emergency situations), take messages, receive deliveries, greet as many as twenty-five visiting clients each day, notify attorneys when clients or visitors were present, and update and distribute forms to clients. The job involved a good deal of pressure and a heavier work load that than Cabrera had experienced in her prior LAFC assignments.

At the general office, Cabrera was supervised by Maria Sotelo, who is of Mexican descent. In December 1979, Sotelo sent Cabrera a memorandum regarding several complaints from clients and LAFC personnel that she had treated them rudely; Sotelo cautioned Cabrera that though she understood Cabrera's job was demanding, such incidents should not occur. In February 1998, Sotelo delivered Cabrera her job evaluation for 1997, characterizing her overall performance as "average" but noting several criticisms concerning misdirection of phone calls. In April 1998, Sotelo gave Cabrera a disciplinary warning concerning an incident in which Cabrera allegedly had failed to advise LAFC personnel that visitors had arrived for a scheduled meeting, and another incident in which Cabrera allegedly had failed promptly to pass on an

emergency message from an employee. Sotelo's memorandum referenced the December 1997 memorandum.

In June 1998, Sotelo moved Cabrera to the "intake" switchboard. This position involved many of her prior responsibilities as well as some new ones, including obtaining intake data from prospective clients and entering it into a computer system to determine their eligibility for representation. At her deposition, Cabrera testified that she found the new responsibilities difficult and felt that she did not get sufficient cooperation from the other receptionist. Cabrera repeatedly discussed with Sotelo in 1998 and 1999 the difficulties she was having with the job, telling Sotelo that she had too many responsibilities and needed more help or relief from some of her duties.

On June 22, 1998, Sotelo gave Cabrera a memorandum concerning an incident in which Cabrera had not returned to her desk after lunch when scheduled, requiring others to fill in for her, and other incidents in which the phone had not been answered. On July 21, Sotelo disciplined Cabrera for allegedly failing to have an envelope delivered by messenger. Cabrera denies the underlying allegation, saying that another employee had supposedly taken care of the delivery, but she identifies no evidence suggesting that Sotelo did not honestly believe the allegation. On August 11, Sotelo disciplined Cabrera for misdelivering a package, arguing with a coworker in a public area of the LAFC office, and two incidents in which she had failed to deal promptly with visiting clients. Again, Cabrera denies the underlying allegation but does not identify any facts suggesting that Sotelo did not honestly believe it.

Cabrera was again disciplined on September 25, 1998, this time by Sotelo and Mary Billington, LAFC's office administrator, for allegedly allowing a client to wait unattended in the

3

reception area and failing to properly handle documents that a client had left at the reception desk. Cabrera was suspended for five days, due partly to her prior history of discipline and improper conduct. Cabrera disputes the underlying allegation, saying that she dealt promptly with all walk-in clients, but in this instance as in the others disputed by Cabrera, Sotelo was relying on information given to her by other LAFC personnel, and Cabrera has pointed to no evidence suggesting that Sotelo did not honestly believe what she had been told.

Cabrera was again suspended for five days in October 1998 based on a series of incidents involving poor service to clients. Again, Cabrera challenges the underlying claim but offers nothing suggesting that Sotelo, Billington, and/or Margaret Dominguez (evidently another LAFC supervisor), who were responsible for disciplining her, did not honestly believe the claims that had been made against Cabrera. Cabrera filed a grievance concerning the suspension pursuant to the collective bargaining agreement covering LAFC employees, and in order to settle the grievance Sotelo, Billington, and Dominguez decided to reduce the suspension to two days.

In February 1999, Billington and Sotelo suspended Cabrera for ten days for various breaches of client service procedures. Their memorandum to Cabrera referenced the prior warnings and disciplinary actions and stated that Cabrera "continue[s] to undertake [her] job in a careless and unprofessional manner despite repeated warnings." Dfdt. Ex. P. Cabrera's response is the same as with the other disciplinary actions: she disputes the underlying claims made against her but produces no evidence that Sotelo or Billington did not honestly believe those claims.

On March 18, 1999, Cabrera filed a charge of national origin discrimination with the Illinois Department of Human Rights, challenging the October 1998 and February 1999

4

suspensions. In her charge, Cabrera alleged that Becky Greer, an African-American employee who filled in for Cabrera when she was on break or on vacation, had not been disciplined for misconduct similar to that involved in the October 1998 suspension and that Greer and two other African-American employees, Sharon Knight and Toni Brown, had not been disciplined for misconduct similar to that involved in the February 1999 suspension.

In April 1999, Cabrera sent a memo to Sotelo and Sheldon Roodman, LAFC's executive director, requesting a workload review because she felt her current duties were too onerous, which had caused her "tremendous stress and anxiety." Dfdt. Ex. S. In late May 1999, Cabrera responded to her evaluation for 1998 (issued in mid-May 1999) - in which Sotelo had characterized Cabrera's performance as "less than adequate," Dfdt. Ex. T – claiming that she was doing her job properly and was being singled out for unfair criticism. In mid-August 1999, Cabrera filed a second charge with the IDHR, claiming that the evaluation had been issued in retaliation for her March 1999 IDHR charge.

Cabrera was suspended for ten days on September 7, 1999 for a series of incidents involving improper client service. In her Rule 56.1(b)(3) statement, Cabrera does not identify any dispute with the claims made in the disciplinary memo. This was followed by a disciplinary warning (but no sanction) dated September 8, 1999 for taking extended lunch breaks without consulting with her supervisor; Cabrera denies this, saying that she had in fact consulted with Sotelo about taking the break.

On September 27, 1999, Sotelo and Billington issued Cabrera a disciplinary notice terminating her employment. The notice stated that Cabrera had been "repeatedly disciplined for [her] neglectful, careless and unprofessional attitude toward clients of the agency as well as other

5

aspects of [her] job"; noted that her supervisors had "made every effort to give [Cabrera] the opportunity to correct [her] conduct; and stated that the decision to terminate Cabrera "was made after it became clear that progressive discipline was not accomplishing the desired outcome." The notice cited three incidents from August and September 1999 involving improper handling of phone calls. Cabrera disputes the underlying claims – though she does not identify the substance of her dispute – but again fails to point to any evidence indicating that Sotelo and Billington did not honestly believe the allegations against her.

In an effort to head off any claim of discriminatory imposition of discipline, LAFC has submitted a collection of disciplinary notices issued by Sotelo to Caucasian, African-American, and Mexican-American employees. Dfdt. Exs. AA-NN. These include suspensions of two of the employees identified by Cabrera in her IDHR complaint as comparables: Sharon Knight (one warning, two five-day suspensions, and two ten-day suspensions) and Toni Brown (two warnings and two ten-day suspensions). Sotelo points out that Knight was not terminated despite the repeated imposition of discipline and notes that Brown was not terminated even though she had falsified time records. Sotelo also offers evidence that Marguerite Flores, a Mexican-American secretary who at times filled in at the receptionist position, received four disciplinary notices from Sotelo in 1998 but was never suspended.

## Discussion

Summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the non-moving party's evidence "is to be believed, and all

6

justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Cabrera claims that she was terminated due to her national origin and in retaliation for making a complaint to the IDHR.[1] We deal first with the claim of national origin discrimination. Cabrera has offered no direct evidence of discrimination or retaliation. Thus Cabrera must proceed under the familiar burden-shifting method of proof outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), by first offering evidence sufficient to permit a reasonable fact finder to find that she can establish a prima facie case of discrimination. *See id.* at 802-05. Specifically, to support her termination claim, Samuel must offer evidence that (1) she is a member of a protected class; (2) at the time of her discharge, she was meeting LAFC's legitimate expectations; (3) she was discharged; and (4) LAFC treated similarly situated individuals outside of the protected class more favorably. *See, e.g., Peters v. Renaissance Hotel Operating Co.*, ___ F.3d ___, 2002 WL 31102308, at *6 (7th Cir. Sept. 20, 2002). If Cabrera can satisfy this burden, LAFC must then articulate, if it can, a legitimate non-discriminatory reason for terminating her. *McDonnell Douglas*, 411 U.S. at 731-32. The burden then shifts back to Cabrera to produce evidence from which a jury could find that LAFC's stated reason was not its real reason but rather was a pretext for discrimination. *Id.* at 804-05. *See also Reeves v. Sanderson Plumbing Co.*, 533 U.S. 133, 143 (2000); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

---

[1] Cabrera's complaint suggests that she also claims that the March 1999 performance evaluation constituted unlawful retaliation. Cplt., ¶20. But she does not press this claim in response to LAFC's motion, and in any event a negative performance evaluation, standing alone, is not considered "adverse employment action" that is actionable in a Title VII retaliation case. *See, e.g., Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002).

LAFC argues that Cabrera cannot establish that she was meeting LAFC's legitimate expectations. Because, however, this argument is premised on the same conduct that underlies LAFC's stated reason for terminating Cabrera, we will assume for purposes of discussion that Cabrera can establish a prima facie case and proceed directly to the issue of pretext. *See, e.g., Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001).

The issue of pretext concerns whether the reasons that LAFC offered were the real reasons for its actions, *see Burdine,* 450 U.S. at 253 (1981), or to put it another way, whether LAFC's explanation was honest. *See, e.g., O'Regan v. Arbitration Forms, Inc.,* 246 F.3d 975, 984 (7th Cir. 2001). To show that a genuine factual issue exists on the question of pretext, Cabrera must present evidence from which a reasonable fact finder could infer that LAFC "did not, at the time of [her] discharge, honestly believe the reason [it] gave for firing [her]." *Michas v. Health Cost Controls of Illinois, Inc.,* 209 F.3d 687, 694-95 (7th Cir. 2000). As the Court has discussed, Cabrera has failed to present any such evidence. Her claims that she did not do some of the things that gave rise to discipline are insufficient to show that a genuine factual dispute exists regarding the motivation of LAFC's decision makers. With one inconsequential exception,[2] all of the matters that formed the basis for discipline involved events that were reported to Sotelo by other LAFC personnel. Cabrera has offered no evidence that these personnel reported things differently than Sotelo (and in some instances Billington) characterized them in the disciplinary notices, or that Sotelo did not honestly believe what had been reported to

---

[2] The exception involves the September 8, 1999 warning regarding Cabrera's alleged failure to clear her extended lunch breaks with a supervisor. But there is no indication that this played any role in Cabrera's termination; it is not cited as part of her disciplinary history in the termination notice. *See* Dfdt. Ex. Z.

8

her. Nor has Cabrera offered any evidence suggesting that these matters were insufficient to motivate a discharge, an argument that would have been strained in any event in light of her extensive history of disciplinary infractions and performance failures, and her virtual admissions that she could not handle all of her job duties.

Evidence of differential treatment of similarly situated persons not in the same protected class as the plaintiff – in this case, employees of non-Puerto Rican origin – is an accepted means of showing pretext. *See, e.g., Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1042 (7th Cir. 1993). But Cabrera has offered no evidence from which a reasonable jury could find that similarly situated LAFC employees who were not of Puerto Rican national origin were treated differently from her. *See generally* Pltf. Rule 56.1(b)(3) Stmt., ¶¶68-113. Some of the employees cited by Cabrera were supervised by persons other than Sotelo; others had records of infractions that do not begin to approach Cabrera's record of frequent misconduct that was repeated even after she was warned and disciplined. The only two employees whose record was anywhere near the same ballpark as Cabrera's – Sharon Knight and Toni Brown, both African-American employees – were, like Cabrera, the subject of progressively more severe discipline as their infractions were repeated over time. Knight and Brown, however, had a much less aggravated disciplinary history than Cabrera, and thus LAFC's disciplinary action did not progress all the way to termination in their cases. No reasonable jury could find these employees were similarly situated to Cabrera in all relevant respects. *See generally Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). Thus their allegedly different treatment could not give rise to a reasonable inference of pretext.

For these reasons, LAFC is entitled to summary judgment on Cabrera's discrimination

claim.

We turn next to Cabrera's retaliation claim "[A] claim of retaliation under Title VII can be proven by 'either offer[ing] direct evidence of retaliation or proceed[ing] under a burden-shifting approach." *Alexander v. Wisconsin Department of Health and Family Services*, 263 F.3d 673, 682 (7th Cir. 2001) (quoting *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 601 (7th Cir. 2001)). Cabrera offers no direct evidence that her termination stemmed from her filing of claims with the IDHR, so she must proceed under the burden-shifting method. Skipping ahead to the issue of pretext, the analysis is the same as it was with regard to Cabrera's national origin discrimination claim. Cabrera has failed to offer evidence from which a reasonable jury could find that LAFC's stated reasons for terminating her were not the real reasons. LAFC is therefore entitled to summary judgment on Cabrera's retaliation claim.

## Conclusion

For the reasons stated above, the Court grants LAFC's motion for summary judgment [docket item 8-1]. The Clerk is directed to enter judgment in favor of defendant. The trial date of January 6, 2003 is vacated.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 17, 2002